# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

KENITH L. LEWIS,

    Plaintiff,

vs.

STATE OF IOWA, IOWA PRISON INDUSTRIES, ANAMOSA STATE PENITENTIARY, JOHN AULT, WILLIAM SOUPENE, AL REITER, GREG HART, LENNIE MILLER, UNKNOWN DEFENDANTS,

    Defendants.

No. C05-0134-LRR

ORDER

## *TABLE OF CONTENTS*

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. STANDARDS FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . . 3

*III. MATERIAL FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*IV. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    *A.  42 U.S.C. § 1997e(a)* . . . . . . . . . . . . . . . . . . . . . . . . . 12

    *B.  Other Grounds* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*V. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

The matters before the court are the plaintiff's motion for summary judgment (Doc. No. 28) and the defendants' cross-motion for summary judgment (Doc. No. 37). The plaintiff filed his motion for summary judgment on May 31, 2006 and the defendants filed their cross-motion for summary judgment on July 31, 2006. The defendants resisted the plaintiff's motion for summary judgment on July 19, 2006. The plaintiff resisted the defendants' cross-motion for summary judgment on October 12, 2006.

A former inmate of the Anamosa State Penitentiary ("ASP") in Anamosa, Iowa,[1] the plaintiff filed this action against the defendants under 42 U.S.C. § 1983 to redress the alleged deprivation of his constitutional rights. The plaintiff contends that the defendants violated his constitutional right to due process and constitutional right to equal protection when they determined that he violated several rules of the Iowa Department of Corrections and altered his employment. For the alleged violation of his constitutional rights, the plaintiff seeks to recover actual, compensatory and punitive damages. Subject matter jurisdiction is predicated on 28 U.S.C. § 1343(a)(3).

Denying they committed any constitutional violation, the defendants maintain that there are no disputed facts and it is appropriate for the court to grant them judgment as a matter of law. Specifically, the defendants argue that: (1) *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 643-44, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997) prevent the plaintiff from prevailing under 42 U.S.C. § 1983; (2) 42 U.S.C. § 1997e(a) bars the instant action because the plaintiff failed to exhaust the administrative remedies that were available to him; (3) 42 U.S.C. § 1997e(e) prevents the plaintiff from recovering for any mental or emotional injury; (4) there is no evidence that the plaintiff received disparate treatment or that the decision regarding his employment was motivated by a discriminatory purpose, and,

---

[1] The plaintiff is currently incarcerated in the Fort Dodge Correctional Facility in Fort Dodge, Iowa.

therefore, the equal protection claim is without merit; and (5) they are entitled to qualified immunity. They seek dismissal pursuant to Federal Rule of Civil Procedure 56.

In his motion for summary judgment, the plaintiff also relies on Federal Rule of Civil Procedure 56. The plaintiff contends that judgment as a matter of law should be entered in his favor because the undisputed material facts establish that the defendants violated his due process and equal protection rights when they disciplined him and removed him from his job. Further, the plaintiff, among other things, maintains that the defendants are not able to rely on 42 U.S.C. § 1997e(a) or 42 U.S.C. § 1997e(e) and they are not entitled to qualified immunity.

Finding the motion for summary judgment and cross-motion for summary judgment to be fully submitted and ready for decision,[2] the court turns now to consider them.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005); *Woods*, 409 F.3d at 990.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which

---

[2] The court notes that neither party complied with Local Rule 56.1(b). Nonetheless, the court deems it appropriate to review the merits of the motion for summary judgment and cross-motion for summary judgment.

3

show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Anderson*, 477 U.S. at 248; *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### III. MATERIAL FACTS

On or about February 4, 1999, the plaintiff arrived at the ASP. On March 18, 2005, Defendant Miller prepared an incident report. In such report, Defendant Miller stated:

> Per the discussion between Al Reiter and myself, all music and headphones have been removed from both braille shop areas. A single common radio per area is the only form of music permitted in the shop and will not be located in any ones personal area. All personal head phones have been removed.

On March 25, 2005, Defendant Reiter issued a disciplinary report to the plaintiff. The disciplinary report cited rule #16 (Unauthorized Possession/Exchange)[3], rule #35

---

[3] Rule #16, in relevant part, provides:
> An offender commits an offense under this subsection if the offender has in possession on the offender's person, in the offender's cell or domicile, in the offender's immediate sleeping area, locker, or immediate place of work or other program assignment; or receives from or gives to another offender, or fashions or manufactures or introduces, or arranges to introduce in to the institution any unauthorized item(s) delineated as contraband including, but not limited to, . . . property belonging to someone else or anything not authorized . . .

4

(False Statements)[4] and rule #43 (Attempt or Complicity)[5]. In the narrative portion of the disciplinary report, Defendant Reiter stated:

> On March 18, 2005 at approximately 10:30 am while doing rounds in Braille shop, I asked Inmate Ken Lewis where he had [gotten] music from that he was listening to in the shop. He stated that Senior Technician Lennie Miller had given it to him. Industries Supervisor Ken Opatz also was standing next to me and heard the conversation. Lennie Miller provided incident report on 3-24-05 that he had not given Inmate Lewis music and that Inmate Lewis was lying.

On the same date at approximately 11:45 a.m., the plaintiff received the disciplinary report.

On March 26, 2005, an investigation was conducted. The investigating officer noted that plaintiff did not desire to make a comment and requested no witnesses. On March 28, 2005, Defendant Soupene conducted a disciplinary hearing, which was continued so that more information could be obtained. On the same date, Defendant Soupene wrote a memorandum to Mike Bickford. In such memorandum, Defendant Soupene stated:

> At a disciplinary hearing this date, Industries Supervisor Al Reiter had cited Inmate Lewis for having music at his work site in the Braille Shop. Supervisor Reiter does not indicate that the music was on Inmate Lewis' computer.

---

[4] Rule #35, in relevant part, provides:
An offender commits an offense under this subsection when the offender knowingly makes a false statement whether or not under oath or affirmation including, but not limited to, dishonesty, deception, cheating, etc.

[5] Rule #43, in relevant part, provides:
An offender commits an offense under this subsection when the offender attempts any of the listed offenses or is in complicity with others who are committing or attempting to commit any of the listed offenses.

5

> At the hearing, Inmate Lewis stated, "Mr. Reiter asked about music on the computers. He asked me where did my music come from. I said some of the music was on the computer when I started using it. Lennie (IPI Supervisor Miller) gave me some and I put some on the computer. I do not have a burner on my computer. I don't know whether we have a burner in the office."
>
> I provided a continuance at this hearing until the investigation into computer music being conducted by you and Lary Winders is completed.

On March 30, 2005, Defendant Reiter emailed Roger Baysden. In his email, Defendant Reiter stated that Braille Shop inmates had music on their computers and one inmate received a report. He also stated that he responded by placing all removable storage devices (cds, floppies, dvds, zip disks, etc.) under lock and key.

On or about April 6, 2005, Defendant Reiter issued a rewrite of the March 25, 2005 disciplinary report. The disciplinary report once again cited rule #16 (Unauthorized Possession/Exchange), rule #35 (False Statements) and rule #43 (Attempt or Complicity). In the narrative portion of the disciplinary report, Defendant Reiter stated:

> On March 18, 2005 at approximately 10:30 am while doing rounds in Braille shop, I observed Inmate Lewis working at his computer with [a] set of contraband headphones. I asked Inmate Ken Lewis where he had gotten music that it looked like he was listening to on the computer. He stated that Senior Technician Lennie Miller had given it to him. Industries Supervisor Ken Opatz also was standing next to me and heard the conversation. Lennie Miller provided incident report on 3-24-05 that he had not given Inmate Lewis music and that Inmate Lewis was lying.

The plaintiff received the rewritten disciplinary report on April 6, 2005 at approximately 3:40 p.m.

On April 7, 2005, an investigation was conducted. The investigating officer noted that the plaintiff did not desire to make a comment and requested no witnesses. On April

11, 2005, Defendant Soupene concluded the disciplinary hearing that began on March 28, 2005. In the findings of fact portion of the hearing decision, Defendant Soupene wrote:

> On 3/18/05, 10:30 a.m., Braille Shop, IPI Supervisor Al Reiter observed you working at your computer with a set of contraband headphones and you indicated that the music you were listening to on the computer was given to you by IPI Technician Lennie Miller. Mr. Miller denies that he provided music for your computer.

In the evidence relied upon portion of the hearing decision, Defendant Soupene wrote:

> Report by IPI Supervisor Reiter-witnessed. At hearing on 3/28/05 you stated, "Mr. Reiter asked about music on the computers. He asked me where did my music come from. I said that some of the music was on the computer when I started using it. Lennie (IPI Technician Miller) gave me some and I put some on the computer." During the investigation of this incident, you informed CSII Mike Bickford that IPI Technician Miller "never handed me music CDs or gave me music to download. Mr. Reiter put me on the spot with his questions" You admit at hearing to providing contradictory statements. Statement from IPI Technician Lennie Miller indicates that he did not provide music to download on your computer.

Consequently, Defendant Soupene found that the plaintiff violated rule #16 and rule #35, and he imposed sanctions, which included reclassification to level four, cell rest and loss of earned time. With respect to the ultimate disposition, Defendant Soupene suspended the cell rest and loss of earned time sanctions. Defendant Soupene also noted that the plaintiff's work assignment would be reviewed by a treatment team and informed the plaintiff of his right to appeal within twenty-four hours of the hearing.

On the same date, the plaintiff completed the appeal form provided to him. As a basis for appealing the disciplinary action, the plaintiff wrote:

> Warden Ault, I make no excuses for my poor choice of words when Mr. Reiter asked me about the music on my computer. I used poor judgment and I made a mistake. I'm asking that you please allow me to remain in my current living status of

7

level 5. I do not take this privilege for granted plus I value and appreciate having it. I made a poor decision and I can assure you that I won't do it again.

On April 15, 2005, Defendant Hart emailed Defendant Reiter. In his email, Defendant Hart stated:

> With your permission, I would like to pose the questions below to Inmate Lewis and have him write an answer for each over the weekend. Lennie and I both agree that Lewis has made a very uncomfortable work environment and that tensions are running high at this time because of that. It is my feeling (and Lennie agrees) that Lewis should be removed (not as punishment) from the Braille Shop for a minimum of six-months to allow for a "cooling off period" for all that were involved because of his actions. After a pre-determined time, we would interview him and reinstate him to the shop if he remains report free and has overcome his bitterness towards others. If you approve, I would also like your recommendation for the amount of pay he would return at so that can be discussed beforehand. He currently makes .63 per hour plus .15 longevity.
>
> Why do you feel that you should remain employed in the Braille Shop?
>
> How can you insure that you can co-exist in a work environment with the current Braille Shop staff member?
>
> How can you insure that you can co-exist in a work environment with the current Braille Shop inmate workers?

On the same date, Defendant Reiter responded to Defendant Hart's email. He indicated that the plaintiff could come back at $0.63 and longevity would be reinstated at $0.09 if he remained report free.

On April 16, 2005, the plaintiff answered the three questions posed to him. With regard to the first question, the plaintiff stated:

> In spite of this incident, I should remain in the braille shop because I am a trained and very skilled . . . . The ability to do

> my job is not in question. I am a good worker and will continue to be so. I am confident my work ethic will not change. My long, distinguished, work history in prison and on shop row, the braille shop in particular, will attest to these facts. My job in braille is important to me plus I appreciate being able to be of service to those in need of the product I help to provide. The braille shop has invested a lot in me over the years. To this day, I continue to return the investment one hundred percent.

Concerning the second question, the plaintiff stated:

> Notwithstanding the computer music, my headphones I had at work, and my poor choice of words, my supervisor and I have an exceptional working relationship. I have proven I can work well with all staff on shop row. I have a great attitude and do more than what is required of me in the work environment. I don't need to be told what to do or asked twice to do things because I choose to be a good worker. I come to work and work to the best of my ability. I have always shown an attitude that is positive, courteous, helpful, polite, honest, hardworking, open, respectful, conscientious, ethical, and trustworthy. These are the behavior I will continue to demonstrate.

With respect to the third question, the plaintiff stated:

> I've spoken with those inmates who were implicated because of the comments I made during the investigation into the entire computer music incident and my poor choice of words. I believe we have come to a conclusive understanding where no hostility, animosity or anger exists on any of our parts. We are all members of the braille team. I will continue to do my part offering insights, guidance, and assistance when asked and needed. I will continue to be supportive and encourage good work as I foster a positive work environment. My commitment to the braille shop and all of its employees has not changed. I can be a valuable member of the team because of my senior braille experience and my willingness to get along with and work well with others which benefits us all.

On April 18, 2005, Defendant Hart emailed Defendant Reiter. In his email, Defendant Hart stated:

> Lennie and I talked with Inmate Lewis this morning. The first part of the interview was used for discussion and to address the questions listed below. It was obvious that Lewis is still bitter about this situation. He provided reasonable explanations to each but we feel he is not taking full responsibility for his actions.
>
> Lewis was asked to step out while Lennie and I discussed a resolution that would work for all involved. It was agreed that Lewis should be reassigned for a 3-month period at which time we would interview him for reinstatement. The 3-month period is something that I came up with over the weekend because I didn't want an opening held for him (or anyone else) longer than that plus I feel his brailing skills would be adversely effected if not used for an extended period of time.
>
> The second part of the meeting was to explain what we felt was fair and equitable for all. Although he did not agree with our decision, I feel he seemed ready to move on and get the whole thing behind him. We explained that he would be interviewed in 3-months and if reinstated he would receive .63 per hour and an additional .09 longevity after 6 months have elapsed.
>
> The above was explained to Michelle Eden because Lewis has classification tomorrow. I told her the decision was pending your approval because it was different than what we originally discussed.

On the same date, Defendant Reiter responded to the Defendant Hart's email. He indicated that he approved of the course that Defendant Hart proposed.

In his disciplinary appeal response dated April 18, 2005, Defendant Ault noted that the plaintiff requested a lighter penalty, and Defendant Ault decided to modify the disciplinary decision by reducing the sanctions imposed. In the comments portion, Defendant Ault wrote:

10

> In your written appeal you request that you be allowed to retain your level. You admit to making a poor decision and assure me that you will not repeat that behavior again. I see that ALJ William Soupene gave you a break by suspending your cell rest and earned time sanctions since, in part, you have been free of major reports for over 6 years. Up to this point, you have done a very good job on your work assignment as well as on the unit, and I considered that when reviewing you request to retain your level. It is therefore ordered that you be allowed to keep your level. Should you find yourself again caught up in a major report, don't even ask to remain in level 5 as you will be moved.

Although an inmate may raise new issues regarding a disciplinary matter by filing a written request for further review to the warden within 15 days of the administrative law judge's disciplinary decision, the plaintiff did not request further review.

On August 2, 2005, Defendant Hart emailed Defendant Miller. In such email, Defendant Hart stated:

> Michelle Eden called to arrange for an interview with Braille staff and Inmate Lewis since his 90-days away from the shop has expired. She will kite Inmate Lewis to the shop for an interview at 9:30 on Thursday. Lennie and I will discuss our expectations and the pay agreement with him. All will agree on the terms before this Inmate is allowed back in the shop.

On August 5, 2005, Defendant Miller wrote a memorandum to Defendant Hart. In such memorandum, Defendant Miller stated:

> As agreed on 8/4/2005, Greg Hart and I met with Inmate Ken Lewis when the 3 month probation period had expired as agreed to on 4/18/2005. This meeting was set to review the issues discussed with Inmate Lewis on 4/18/2005 and to determine if it was in the best interest of the Braille shop to have Inmate Lewis return to work. During the 4/18 meeting, it was obvious that Inmate Lewis was bitter over the music issue and refused to take responsibility for his actions. The 3 month probation period was intended to establish a cooling off period that would allow Lewis to return to work with a better attitude towards the shop.

11

> During the interview, Inmate Lewis stated that what happened in the past is not relevant at this time. He makes it apparent that he still is not accepting responsibility for his actions. He stated that his desires are irrelevant but did go on to say that he wanted to work in the Braille shop.
>
> Inmate Lewis has received no additional major reports. Cell house staff has indicated that Inmate Lewis does the work assigned to him and has had no problem with him in the last 3 months.
>
> Inmate Lewis was informed that the shop was on edge during his last incident. I have noticed that the shop has a real sense of calmness and cooperation since he was reassigned.
>
> This review is consistent with institutional policy for inmates assigned to one area for an extended period of time. It is my opinion that it is in the Braille shop's best interest that he not return to work as he still carries animosities towards the shop.

On August 24, 2005, officials transferred the plaintiff from the ASP to the Fort Dodge Correctional Facility in Fort Dodge, Iowa. From January 1, 2005 to July 28, 2006, the plaintiff never utilized the grievance resolution process at the ASP.

## IV. LEGAL ANALYSIS

### A. *42 U.S.C. § 1997e(a)*

42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion in cases covered by 42 U.S.C. § 1997e(a) is mandatory. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739-41, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001)); *see also Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (concluding dismissal required when inmate

12

has not administratively exhausted before filing lawsuit in district court); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) ("The [requirements of 42 U.S.C. § 1997e(a)] are clear: if administrative remedies are available, a prisoner must exhaust them."). "[A] prisoner who files a complaint in federal court asserting multiple claims against multiple prison officials based on multiple grievances must have exhausted each claim against each defendant in at least one of the grievances." *Abdul-Muhammad v. Kempker*, 450 F.3d 350, 352 (8th Cir. 2006).

Here, the record indicates that the plaintiff failed to present the facts relating to his claims in the disciplinary or grievance procedure available to him. It is clear that the plaintiff failed to raise a due process claim or equal protection claim when he appeared before the administrative law judge and when he appealed the administrative law judge's disciplinary decision. In fact, the plaintiff admitted that he violated institutional rules and ultimately agreed with the disciplinary decision. Stated differently, the plaintiff did not disagree with or disapprove of the disciplinary decision because it did not include punishment or sanctions that effected his employment status. Further, the plaintiff never filed a grievance that asserted the defendants' decision regarding his employment violated principles of due process and equal protection. Because he did not pursue his equal protection claim or due process claim in the prison grievance process, the court finds that the plaintiff failed to exhaust his administrative remedies. *Cf. Abdul-Muhammad*, 450 F.3d at 351-52 (concluding dismissal proper because inmate failed to identify by name during the grievance process each individual defendant he later sued in federal court); *Graves v. Norris*, 218 F.3d 884, 885-86 (8th Cir. 2000) (stating dismissal is appropriate where at least some of the claims were unexhausted); *McAlphin v. Morgan*, 216 F.3d 680, 682 (8th Cir. 2000) (finding the plaintiff failed to meet the requirements of 42 U.S.C. § 1997e(a)) (citing 42 U.S.C. § 1997e(a) and *Rivers-Frison v. Southeast Missouri Cmty. Treatment Ctr.*, 133 F.3d 616, 619 n.2 (8th Cir. 1998)). Thus, it is appropriate to grant judgment in favor of the defendants and dismiss the plaintiff's complaint.

## B. *Other Grounds*

Apart from discussing 42 U.S.C. § 1997e(a), the plaintiff discusses the merits of his due process claim and equal protection claim, contends that the defendants are not able to rely on 42 U.S.C. § 1997e(e) and asserts that the defendants are not entitled to qualified immunity. Similarly, in their cross-motion for summary judgment, the defendants discuss the merits of the plaintiff's claims under 42 U.S.C. § 1983, claim that 42 U.S.C. § 1997e(e) prevents the plaintiff from recovering for any mental or emotional injury and rely on principles of qualified immunity. Although the court could review the merits of the plaintiff's claims and the additional defenses asserted by the defendants, the court declines to conduct such review. *See* 42 U.S.C. § 1997e(c). Nonetheless, the court notes that the plaintiff's claims most likely fail on the merits.

## V. *CONCLUSION*

The court reviewed the law that is applicable to the plaintiff's claims against the defendants and the undisputed material facts. In light of such review, the court concludes that the defendants are entitled to judgment as a matter of law on all of the plaintiff's claims. The record, when viewed in the light most favorable to the nonmoving party, fails to establish a genuine issue of material fact with respect to whether the plaintiff exhausted his administrative remedies. The defendants have met their burden in proving that the undisputed material facts in the instant case entitle them to judgment as a matter of law on each of the plaintiff's claims.

**IT IS THEREFORE ORDERED:**

(1)  The plaintiff's motion for summary judgment (Docket No. 28) is DENIED.

(2)  The defendants' cross-motion for summary judgment (Docket No. 37) is GRANTED.

(3)  The action is DISMISSED without prejudice.

**DATED** this 17th day of January, 2007.

LINDA R. READE
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA